UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PAXFUL, INC.,                                       :    1:21-cv-3331-PGG-SN
                                                    :
                        Plaintiff,                  :
                                                    :
            -against-                               :
                                                    :
JAN STRANDBERG,                                     :
                                                    :
                        Defendant.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**RELY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS
COMPLAINT**

**HERRICK, FEINSTEIN LLP**
*Attorneys for Defendant Jan
Strandberg*

Carol M. Goodman
Joshua S. Stricoff
2 Park Avenue
New York, New York 10016
(212) 592-1400

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................... ii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT** ............................................................................................................................. 2

    I.    Paxful Refuses to Address the Inherent Implausibility of its Claims ................................. 2

          A.  The Doctrine of Voluntary Payment is a Complete Bar to Recovery .......................... 3

          B.  Paxful Otherwise Fails to State a Claim ..................................................................... 4

    II.   If Not Dismissed for Failure to State a Claim, the Complaint Should be Dismissed

         Pursuant to the Doctrine of *Forum Non Conveniens* ......................................................... 6

          A.  Dismissal is Warranted Pursuant to Controlling Supreme Court Precedent................. 6

          B.  The Forum Selection Clause in the Contract for Services is Binding against Paxful

              and Strandberg .......................................................................................................... 8

    III.  Paxful Still Cannot Establish Personal Jurisdiction Over Strandberg ............................... 9

    IV.  Paxful Fails to Justify Its Fictitious Amount in Controversy ........................................... 10

**CONCLUSION** ....................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co. for First Franklin Mortg. Loan Tr. 2006-FF3 Mortg. Pass-Through Certificates, Series 2006-FF3*, No. 15-CV-4516 (SIL),
2018 WL 4608198 (E.D.N.Y. Sept. 25, 2018) .......................................................................... 3

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ..................................................................................................................... 8

*Banque Worms v. BankAmerica Int'l*,
77 N.Y.2d 362 (1991) ................................................................................................................ 4

*Carlson v. Cuevas*,
932 F. Supp. 76 (S.D.N.Y. 1996) ............................................................................................. 9

*Citicorp N. Am., Inc. v. Fifth Ave. 58/59 Acquisition Co., LLC*,
70 A.D.3d 408  (1st Dep't 2010) .............................................................................................. 4

*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
70 N.Y.2d 382 (1987) ............................................................................................................ 5, 9

*Copeland v. Life Sci. Technolgies, Ltd.*, No. 97 CIV. 0456 (SHS),
1997 WL 716915 (S.D.N.Y. Nov. 17, 1997) ............................................................................ 9

*Daldan, Inc. v. Deutsche Bank Nat'l Tr. Co.*,
188 A.D.3d 989 (2d Dep't 2020) ............................................................................................. 4

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
7 N.Y.3d 65 (2006) ................................................................................................................. 10

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
100 N.Y.2d 525 (2003) .............................................................................................................. 3

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 CIV. 10550 (SHS),
2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ........................................................................... 8

*DRMAK Realty LLC v. Progressive Credit Union*,
133 A.D.3d 401 (1st Dep't 2015) ............................................................................................. 4

*Fischbarg v. Doucet*,
9 N.Y.3d 375 (2007) ............................................................................................................... 10

*Francisco v. United States*,
115 F. Supp. 3d 416 (S.D.N.Y. 2015) ....................................................................................... 3

*Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.*,
    273 F.3d 509 (2d Cir. 2001).............................................................................. 5

*Goldman v. Metro. Life Ins. Co.*,
    5 N.Y.3d 561 (2005) ......................................................................................... 5

*Hearst Corp. v. Goldberger*,
    No. 96 CIV. 3620 PKL AJP, 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) ................... 9

*Hilley v. Massachusetts Life Ins. Co.*,
    32 F. Supp.2d 195 (E.D. Pa. 1998) ................................................................. 11

*Kocourek v. Booz Allen Hamilton Inc.*,
    71 A.D.3d 511 (1st Dep't 2010) ........................................................................ 5

*KT Export v. Wolf Canyon of Am., Inc.*,
    No. 09-CIV-07123, 2010 WL 3835072 (S.D.N.Y. Sept. 14, 2010) ...................... 11

*Leder v. Am. Traffic Sols., Inc.*,
    630 F. App'x 61 (2d Cir. 2015).......................................................................... 3

*Manufacturers Hanover Tr. Co. v. Chem. Bank*,
    160 A.D.2d 113 (1st Dep't 1990) ...................................................................... 4

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)............................................................................... 2

*Paramount Film Distrib. Corp. v. State*,
    30 N.Y.2d 415 (1972) ....................................................................................... 4

*Parke-Bernet Galleries, Inc. v. Franklyn*,
    26 N.Y.2d 13 (1970) ....................................................................................... 10

*Parsa v. State*,
    64 N.Y.2d 143 (1984) ....................................................................................... 6

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................... *passim*

*Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC),
    2017 WL 685570 (S.D.N.Y. Feb. 21, 2017).......................................................... 2

**Statutes**

G.O.L. § 5-701 ......................................................................................................... 5

Defendant Jan Strandberg respectfully submits the reply memorandum of law in further support of his motion to dismiss the Complaint pursuant to the doctrine of *forum non conveniens* or, alternatively, to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(1), (2), and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, respectively.

## PRELIMINARY STATEMENT

This matter should be dismissed for four independent reasons: (i) failure to state a plausible claim, (ii) *forum non conveniens*, (iii) lack of personal jurisdiction, and (iv) lack of subject matter jurisdiction. With respect to the first two grounds for dismissal, Paxful fails to address the core of Strandberg's claims that the Complaint is inherently implausible and that this lawsuit should be dismissed on *forum non conveniens* grounds under *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) in favor of a preexisting Estonian lawsuit between Strandberg and a Paxful subsidiary. With respect to the personal and subject matter jurisdiction issues, Paxful misstates the prevailing law entirely. Contrary to Paxful's position, a few alleged phone calls and emails to New York colleagues does not confer personal jurisdiction upon Strandberg. Likewise, Paxful fails to provide any detail as to how the $83,913.19 amount in controversy was calculated. As more full set forth below, the Complaint should be dismissed.[1]

---

[1] Capitalized terms not defined herein have the meanings set forth in Strandberg's opening memorandum of law.

## ARGUMENT

**I.    Paxful Refuses to Address the Inherent Implausibility of its Claims**

Paxful's causes of action are inherently implausible and should be dismissed because they do not form any claim upon which relief may be granted.[2]

Paxful alleges that Strandberg—a marketing consultant—entered into a profit share agreement with Paxful, under which Strandberg would be paid 1.5% of Paxful's net profits per fiscal year.  Cplt. ¶ 15.  Critically, Paxful defined "net profits" in the Complaint as "the net operating income of Paxful and its affiliates, determined by GAAP on a consolidated basis." *Id*. Then, Paxful alleges that it paid Strandberg in *estimated* net profits, even though, paragraphs earlier, Paxful claims to have promised to pay Strandberg in actual net profits determined on a GAAP consolidated basis. *Id*. ¶ 17.  Paxful does not contest that it failed to notify Strandberg that he was being paid in profit estimates, and not actual profits as purportedly promised.  And finally, a few weeks after the Paxful subsidiary that Strandberg worked for terminated Strandberg's contract for services, an audit fortuitously revealed that Paxful's profits for three fiscal years were lower than estimated.  Strandberg Dec. ¶ 10.  Somehow, according to Paxful, the results of this alleged audit entitle it to claw back the payments made to Strandberg in excess of Paxful's actual profits. *Id*. ¶ 20.  Worse yet, Paxful acknowledges that it never informed Strandberg that these profit share payments could be subject to a claw back.  Opp. Memo. at 10-11

---

[2] As stated in Strandberg's opening memorandum, plausibility issues may be addressed before jurisdictional issues are decided. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues.") (internal citations deleted); *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *11 (S.D.N.Y. Feb. 21, 2017) ("The Court therefore decides defendants' motion to dismiss under Rule 12(b)(6) before reaching the separate issue of personal jurisdiction."). Thus, the Court can and should dismiss this action before determining jurisdiction.

Failure to repay the Paxful the alleged excess profit share payments does not form an actionable claim under New York law. Accepting Paxful's allegations as true, Strandberg was promised profit share payments but received profit share estimates.  It is uncontested that he was never informed that (i) he was being paid in estimates and (ii) that the profit share payments were subject to a claw back years after they were made.  Opp. Memo. at 10-11.  These are not claims upon which relief may be granted.

### A.    The Doctrine of Voluntary Payment is a Complete Bar to Recovery

As a threshold matter, these claims are barred by the doctrine of voluntary payment.  "That common-law doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law."  *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003); *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co. for First Franklin Mortg. Loan Tr. 2006-FF3 Mortg. Pass-Through Certificates, Series 2006-FF3*, No. 15-CV-4516 (SIL), 2018 WL 4608198, at *11 (E.D.N.Y. Sept. 25, 2018) ("'The voluntary payment doctrine likewise bars recovery under an unjust enrichment theory, but only where payments [are] voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law.'" (quoting *Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 63 (2d Cir. 2015)).

The decision to pay Strandberg in profit share estimates, as opposed to actual profits, is a complete bar to recovery. An estimate, by definition, could be wrong; it is just a guess—an informed guess, perhaps, but a guess nonetheless.  *Francisco v. United States*, 115 F. Supp. 3d 416, 420 (S.D.N.Y. 2015) ("[P]redictions are, by nature, only guesses or estimates").  The question Paxful presents to the Court is whether, accepting all the allegations of the Complaint as true, Strandberg could have plausibly accepted the risk of overpayment such that this lawsuit could be

maintained against him.  By not contesting that Strandberg was never told that he was being paid

in estimates and that those payments were subject to a claw back, Paxful's opposition answers this

question for the Court.  Of course, Strandberg could not have *possibly*—let alone plausibly—

accepted the risk of overpayment, because it is undisputed that he was never informed that

overpayment due to faulty estimates was a risk in the first place.  The payments were therefore

made by Paxful to Strandberg with full knowledge of the facts—*i.e.,* that they could be higher or

lower than Paxful's actual profits.  *See Daldan, Inc. v. Deutsche Bank Nat'l Tr. Co.*, 188 A.D.3d

989, 991–92 (2d Dep't 2020) ("Here, the Bank concedes that its servicer paid real estate taxes and

insurance on the property, but it has not alleged that it did so accidentally or mistakenly, or that it

was induced to do so by fraud… Accordingly, the voluntary payment doctrine bars the Bank's

unjust enrichment counterclaim.") (internal citation omitted). As a matter of law, Paxful cannot

now maintain a lawsuit against Strandberg to recover them.[3]  *See DRMAK Realty LLC v.*

*Progressive Credit Union*, 133 A.D.3d 401, 405 (1st Dep't 2015) (Affirming preanswer dismissal

of a complaint based on the doctrine of voluntary payment); *Citicorp N. Am., Inc. v. Fifth Ave.*

*58/59 Acquisition Co., LLC*, 70 A.D.3d 408, 409 (1st Dep't 2010) (same).  Hence, the Complaint

should be dismissed.

### B.    Paxful Otherwise Fails to State a Claim

Paxful otherwise fails to state a claim upon which relief may be granted.

---

[3] Paxful's case law on this widely misses the mark. Paxful's cases involving a mistaken payment should be disregarded, as there was no mistake here. *See Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 367 (1991) (wire transfer sent to wrong party); *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 114 (1st Dep't 1990) (redundant wire transfers sent to same party).  Paxful knowingly paid Strandberg in profit estimates—without telling him—and accepted the risk, and presumably the benefit, if the estimates were either higher or lower than actual profits. Also, Paxful cites cases like *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 422 (1972), which only permitted the case to go forward with respect to the payments of fees that were alleged to have been made under protest.  Paxful does allege that any profit share payment were made under protest, so the case is entirely inapposite.

4

*Unjust enrichment.*  According to Paxful, "[t]he complaint adequately alleges that, under the totality of the circumstances, it would be unjust for Strandberg to retain those Excess Profit Payments." Opp. Memo. at 11.  Amazingly, this sentence follows the acknowledgement that Strandberg was never notified that the estimates were subject to a claw back. *Id.* at 10-11 ("The complaint does not allege that Strandberg promised, as any part of the agreement, to return any Excess Profit Payments that Paxful might make to him under that agreement; rather, the complaint seeks to recoup the Excess Profit Payments through claims for quasi-contractual relief.").  Based on Paxful's admissions, equity and good conscience do not demand that Strandberg return these alleged profit payments. *See, e.g., Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (noting that to establish an unjust enrichment claim, "equity and constitution" must require restitution). To the contrary, it is uncontested that Paxful failed disclosed the true nature of the payments.  Paxful cannot weaponize equitable causes of action to effectively demand a refund after it decided to terminate its relationship with Strandberg.  The unjust enrichment claim therefore fails.[4]

*Payment by Mistake*.  As established above, there was no mistake here.  Paxful admits to paying Strandberg in profit estimates, which, by their nature, could be wrong.  Paxful does not

_____

[4] Moreover, as set forth in Standberg's opening memorandum of law, the purported oral profit share agreement between the parties either (i) renders Paxful's complaint in violation of the statute of frauds, or, alternatively, (ii) as an enforceable oral contract, precludes recovery under quasi-contract theories such as unjust enrichment. According to the Complaint, Paxful alleges that it agreed to pay Strandberg profit share payments "for each Paxful fiscal year"— an agreement that lasted from 2016 to, at the very least, 2019. Cplt. ¶¶ 15-19.  By its terms, the agreement that Paxful alleges "is not to be performed within one year from the making thereof." G.O.L. § 5-701.  And under New York law, plaintiffs are not permitted to use unjust enrichment claims "to evade New York's statute of frauds."  *Kocourek v. Booz Allen Hamilton Inc.*, 71 A.D.3d 511, 512 (1st Dep't 2010).  Thus, the Paxful's claims violate the statute of frauds. Alternatively, if the profit-share agreement is not subject to the statute of frauds, then the unjust enrichment claim is still barred.  If the agreement is enforceable as an oral agreement, then, as a matter of black letter law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (same).  Thus, the unjust enrichment claim would be precluded by a contract governing the profit-share agreement.

contest its failure to inform Strandberg that he was being paid in estimates and admits that it never informed Strandberg of the risk of claw back. Opp. Memo at 10-11. Thus, there was no mistake—accepting all allegations as true, Paxful knew what it was doing, and relief may not be granted on its claims. Paxful's second cause of action for payment by mistake should be dismissed.

  ***Money Had and Received.*** Paxful egregiously misstates Strandberg's argument in favor of dismissal Paxful's third cause of action for money had and received. According to Paxful, Strandberg argues that privity of contract is necessary to state a claim for money had and received. *See* Opp. Memo. at 12. ("There is no requirement for privity between the parties, contrary to Strandberg's assertions."). But this is exact opposite of what Strandberg argued in his opening memorandum of law. Specifically, Strandberg argues, "like unjust enrichment claims, *money had and received claims only arise in the **absence** of a contract controlling the subject matter at hand*. *Parsa v. State*, 64 N.Y.2d 143, 148 (1984)." Strandberg Memo. at 11 (emphasis supplied). Because of this, the Complaint's allegation of an oral contract is fatal to Paxful's claim. Cplt. ¶¶ 15-16. Additionally, Paxful entirely fails to address the Court of Appeals' requirement that claims for money had and received only apply in situations where the proponent of the claim tendered payment because of "oppression, imposition, extortion, or deceit, or by the commission of a trespass." *Parsa*, 64 N.Y.2d at 148. The Complaint contains no allegations of nefarious conduct by Strandberg. For these reasons, Paxful's third cause of action for money had and received should be dismissed.

## II. If Not Dismissed for Failure to State a Claim, the Complaint Should be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens*

### A. Dismissal is Warranted Pursuant to Controlling Supreme Court Precedent

  Notwithstanding Paxful's failure to state a claim, the complaint should be dismissed under the doctrine of *forum non-conveniens*. It is undisputed that Strandberg never actually worked for

Plaintiff Paxful, Inc.  Strandberg, through an Estonian entity known as Neuralink Group OÜ, was instead an independent contractor for Paxful's Estonian subsidiary, Paxful OÜ. Strandberg Dec. ¶¶ 4-5.  It is also undisputed that Paxful OÜ commenced a lawsuit in Estonia against Neuralink Group OÜ and Strandberg for breach of certain restrictive covenants contained in Neuralink Group OÜ's contract for services, and that this lawsuit remains ongoing.  *Id.* ¶¶ 11-12.

Thus, following Supreme Court precedent set forth in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007), the Court should dismiss this case.  In *Sinochem*, the Supreme Court encouraged district courts to take "the less burdensome course," and dismiss the domestic lawsuit in favor of an ongoing foreign action, especially where, as here, (i) there is a parallel lawsuit in a foreign jurisdiction and (ii) "subject-matter or personal jurisdiction is difficult to determine."  *Id.*  These circumstances, according to the Supreme Court, represent a "textbook case for immediate *forum non conveniens* dismissal." *Id.*

Unsurprisingly, Paxful does not address the *Sinochem* decision at all in its opposition to this motion.  Rather, Paxful misstates *forum non conveniens* as a narrow doctrine only available in "exceptional circumstances," but—also unsurprisingly—fails to identify what these exceptional circumstances are.  Nevertheless, there are exceptional circumstances here. First, there is an active parallel case between the parties and/or their affiliates in Estonia.  Strandberg Dec. ¶ 11, Ex. B. Second, the relationship between the parties was largely Estonian; the only nexus to New York is that the alleged profit-share payments were purportedly made by Paxful, Inc., instead of the Paxful subsidiary that Strandberg actually worked for. Strandberg Dec. ¶ 15. And finally, subject matter and personal jurisdiction are tenuous, at best, and completely non-existent, at worst, so—following Supreme Court guidance—this Court should "take the less burdensome course" and dismiss this

in favor of the Estonian action. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. at 435 (2007).

**B.    The Forum Selection Clause in the Contract for Services is Binding against Paxful and Strandberg**

The Contract for Services is between Paxful OÜ and Neuralink OÜ is binding on this dispute. The Contract for Services provides: "All disputes arising from the Contract shall be immediately resolved by way of negotiations between the Parties. If agreement is not reached through negotiation, *disputes shall be resolved pursuant to the procedure provided by the valid legislation of the Republic of Estonia in court.*" Strandberg Dec., Ex. A § 11.3 (emphasis supplied).[5]  As a supplement, the Contract for services also provides: "In issues not governed by the Contract, the Parties shall adhere to the valid legislation of the Republic of Estonia." *Id.* §11.2.

Paxful wrongly argues that, because the claims in this action arise out of the purported profit sharing agreement and not the Contract for Services, the forum selection clause in the latter cannot be enforced against Paxful, Inc. as a non-signatory.  For this proposition Paxful cites *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,* No. 99 CIV. 10550 (SHS), 2000 WL 1277597, at *5 (S.D.N.Y. Sept. 7, 2000)—a case relied on by Strandberg in his opening papers that enforces a forum selection clause against a non-signatory.  There, the court permitted a non-signatory to enforce the forum selection clause because the non-signatory was an affiliate of the signatory entity.  *Id.* at *4.  Here, both Strandberg and Paxful are affiliates/owners of the entities subject to the forum clause at issue.  That is why the forum selection should be enforced against them.

Perhaps more importantly, the argument that Paxful's "causes of action arise out of the Profit Sharing Agreement rather than the consultant agreement between Paxful Estonia and

---

[5] "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

Strandberg" is fatal to Paxful's case. Opp. Memo. at 15. Specifically, this statement directly contradicts Paxful's argument that its claims are "are exclusively quasi-contractual rather than contractual." *Id.* at 10. Paxful cannot have it both ways. Either there is or is not a contract. If there is a contract, then all of its quasi-contract claims are precluded by existence of a valid contract covering the same subject matter. *Clark–Fitzpatrick, Inc.*, 70 N.Y.2d at 388. If there is not a contract, then Paxful's claims arise out of its working relationship with Strandberg as a consultant of a Paxful subsidiary, which is governed by the Contract for Services containing a forum selection clause requiring all disputes to be litigated in Estonia. One way or another, the Complaint should be dismissed.

**III.    Paxful Still Cannot Establish Personal Jurisdiction Over Strandberg**

Paxful admits that its only basis for asserting personal jurisdiction is a few purported calls and emails between Strandberg and Paxful's New York-based employees regarding the profit share payments. Opp. Memo. at 8-9; Cplt. ¶ 18. This is insufficient to establish personal jurisdiction under New York law. *Copeland v. Life Sci. Technolgies, Ltd.*, No. 97 CIV. 0456 (SHS), 1997 WL 716915, at *2 (S.D.N.Y. Nov. 17, 1997) ("Telephone calls and mailings confer personal jurisdiction pursuant to CPLR § 302(a)(1) only if defendants conduct that activity in a manner as to project themselves into New York so as to purposefully avail themselves of the benefits of doing business in New York."); *Hearst Corp. v. Goldberger*, No. 96 CIV. 3620 PKL AJP, 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997) (citing cases). Thus, the Complaint should be dismissed for lack of personal jurisdiction.

Paxful fails to prove otherwise. The cases it cites either support dismissal for lack of personal jurisdiction or contain wholly inapposite facts. For example, in *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996), the court found that it did *not* have personal jurisdiction on the

basis of phone calls between the parties. Critically, the court wrote, "Courts have consistently found similar communications insufficient to give rise to New York jurisdiction under § 302(a)(1)… Therefore, in this case, jurisdiction cannot be premised on § 302(a)(1)." *Id.* (internal citations omitted). Paxful's other cases fare no better. In each case, the defendant conducted the business relationship at issue in the lawsuit almost exclusively over the phone with a New York counterparty. *See, e.g., Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17–18 (1970) (the defendant participated in a New York auction that was the subject matter of the lawsuit via telephone); *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71–72 (2006) (a "sophisticated institutional trader" negotiated the sale of $15,000,000 in bonds that was the subject of the lawsuit with a New York broker); *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380–81 (2007) (defendant in a fee dispute with his New York-based lawyer hired the lawyer to for representation in an out of state lawsuit, and the lawyer's bills reflected that the lawyer performed most of his work in New York). Here, there is no allegation that Strandberg's business relationship with Paxful was conducted over the phone; to the contrary, it occurred largely in Estonia, where Strandberg performed consulting services for Paxful's Estonian subsidiary. Strandberg Dec. ¶¶ 5-6.

Accordingly, Paxful's conclusory allegations of a few communication between Strandberg and New York employees is insufficient to confer personal jurisdiction under New York law.

## IV.    Paxful Fails to Justify Its Fictitious Amount in Controversy

Strandberg argued that Paxful's damages claim of $83,913.19 is wholly illusory. Paxful alleges to have paid Strandberg monthly profit share estimates—despite alleging to have promised payment of actual profits—over the course of multiple fiscal years in the amount of $172,603.98. Cplt. ¶¶ 15-19. Paxful further alleges to have made these payments in Bitcoin. Cplt. ¶17. Paxful then expects the Court to believe that, coincidently, just weeks after Strandberg's contract with

Paxful's Estonian subsidiary was terminated, Paxful reviewed its audited financial statements from years earlier and realized, *for the first time*, that its purported estimated profit share payments to Strandberg exceeded Paxful's actual profits by *48.6%*.[6]  *Id.* ¶ 20.

 No information is provided as to how overpayments based on those monthly amounts could possibly be determined retrospectively considering Bitcoin's highly volatile value relative to the US Dollar. Nor does Paxful specify by what percentage the profit estimates were inaccurate during the fiscal years in question. Paxful, furthermore, does not specify the exchange rate that was used to determine the overpayment, and whether it was based on the value of Bitcoin relative to the Dollar when each payment was made or when the alleged overpayments were discovered. Thus, the amount in controversy is entirely too speculative to support subject matter jurisdiction in this diversity action.  *See KT Export v. Wolf Canyon of Am., Inc.*, No. 09-CIV-07123, 2010 WL 3835072, at *2 (S.D.N.Y. Sept. 14, 2010) (dismissing for lack of subject matter jurisdiction where plaintiff offered only conclusory allegations that the amount in controversy was satisfied); *Hilley v. Massachusetts Life Ins. Co.*, 32 F. Supp.2d 195, 196 (E.D. Pa. 1998) (dismissing allegations as too speculative to support amount in controversy)

 None of this information was provided in opposition to this motion.  Rather, Paxful merely relies on the contention that there is a theoretical possibility that it could prove that the $83,913.19 figure was obtained after an actual audit.  Of course, if Paxful is telling the truth, then it could have just annexed the alleged audit to its opposition, or at the very least provided a non-conclusory description of it.  Tellingly, Paxful didn't do any of that.  Paxful has not provided the Court or Strandberg with a single piece of information that would help the amount in controversy make an iota of sense.

---

[6] $83,913.19 is 48.6% of $172,603.98.

Subject matter jurisdiction should not be exercised on this weak basis.  But even if subject matter cannot be strictly disproven by a "legal certainty" at this stage, the Court is assuredly presented with a question of subject matter that is "difficult to determine."   *Sinochem*, 549 U.S. at 435.  At minimum, this is reason enough to dismiss the Complaint for lack of *forum non-conveniens*, if not for lack of subject matter jurisdiction.  *Id.*  Either way, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 21, 2022

**HERRICK, FEINSTEIN LLP**
*Attorneys for Defendant Jan
Strandberg*

By: */s/ Carol M. Goodman*
     Carol M. Goodman
     Joshua S. Stricoff
2 Park Avenue
New York, New York 10016
(212) 592-1400
